# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

GARTH MERRICK VOIGT, not )
individually but as the appointed liquidator )
of CASTELLANO BELTRAME (Pty) )
LTD., )
 )
        **Plaintiff,** )
 )
v. ) Case No. 10-CV-662-TCK-TLW
 )
FABRICUT, INC., )
 )
        **Defendant.** )

## AMENDED OPINION AND ORDER[1]

Before the Court is Plaintiff Merrick Voigt's Motion to Dismiss Counterclaim (Doc. 21).

## I.    Factual Background

Castellano Beltrame (Pty) Ltd. ("Castellano"), a South African corporation, was in the business of manufacturing decorative textiles for distribution to numerous companies, including Defendant Fabricut, Inc. ("Fabricut"), an Oklahoma corporation. On December 17, 2009, in a case entitled *Franco Giovanni Beltrame v. Castellano Beltrame (Pty) Ltd.*, Case No. 5025/2009, the Master of the High Court of South Africa ("South Africa Court") entered an Order that (1) placed Castellano under "Provisional Winding Up," (2) issued a "Rule Nisi" order, "calling upon all interested parties to show cause why a final winding up order should not be entered," and (3) set a show cause hearing for January 28, 2010. (*See* 12/17/09 Order, Ex. A to Pl.'s Mot. to Dismiss Counterclaim.) On January 28, 2010, no cause being shown, the South Africa Court entered an

---

[1] This Order is being amended for the purpose of correcting errors, including the Court's use of the word "Fabricut" instead of "Voigt" in the third sentence of the final paragraph. Other changes on pages 8 and 9 are designated by footnotes. This Order was originally entered on May 23, 2011.

Order that "said Rule Nisi be and is hereby made absolute." (*See* 1/28/10 Order, Ex. A. to Pl.'s Mot. to Dismiss Counterclaim.)

The 12/17/09 and 1/28/10 Orders placed Castellano in "sequestration," which is similar to bankruptcy under U.S. law. *See* South Africa Insolvency Act, 1936 (Act No. 24 of 1936), 12(1) (explaining that a court may sequestrate the estate of the debtor "[i]f at the hearing pursuant to the aforesaid rule nisi the court is satisfied that the petitioning creditor has established against the debtor a claim and a) the debtor has committed an act of insolvency or is insolvent, and b) there is reason to believe that it will be to the advantage of creditors of the debtors if the estate is sequestered").[2] Similar to U.S. bankruptcy law, the sequestration order divested Castellano of its estate and vested it in an appointed trustee. *See Matter of Stuppel*, 17 B.R. 413, 414 (D. Fla. 1981) (explaining, under South African law, that "the effect of sequestration is to divest the Debtor of his estate and to vest it in the Trustees appointed"). Also similar to the automatic stay imposed by U.S. bankruptcy law, a person may not file suit against the South African debtor's estate for "any liability which arose before its sequestration." *See* South Africa Insolvency Act, 1936 (Act No. 24 of 1936), 75(2) ("SAIA § 75(2)").[3] Plaintiff Garth Merrick Voigt ("Voigt") is the appointed trustee or "liquidator" of Castellano's sequestration estate. South African law directs Voigt, as liquidator, to "call upon all persons indebted to the estate" and, if necessary, institute legal proceedings to recover such debt. *See* South Africa Insolvency Act, 1936 (Act No. 24 of 1936), 77.[4]

---

[2] This law is attached as Exhibit B to Plaintiff's Motion to Dismiss Counterclaim.

[3] This law is attached as Exhibit E to Plaintiff's Motion to Dismiss Counterclaim.

[4] This law is attached as Exhibit C to Plaintiff's Motion to Dismiss Counterclaim

2

On October 15, 2010, Voigt, in his capacity as liquidator of the Castellano estate, filed a Complaint in this Court against Fabricut. Voigt alleged that Fabricut failed to pay certain invoices for goods ordered and shipped between June 2009 and December 2009. Voigt attached to the Complaint various invoices and their "corresponding airway bills." (*See* Compl. ¶ 8 & Ex. A.) Based on these unpaid invoices, Voigt asserted claims for breach of contract, account stated, and unjust enrichment. Voigt sought the specific amount of $324,033.65 on behalf of the Castellano estate.

On November 23, 2010, Fabricut filed a counterclaim against Voigt ("Counterclaim"), alleging a breach of the implied promise of "product continuity" accompanying Fabricut's purchases from Castellano. Fabricut explained the concept of product continuity as follows:

> In the fabrics industry, decorative fabrics are sold by distributors to customers (principally designers and retailers) pursuant to fabric programs developed, at substantial cost, by the distributors. Fabric distributors invest substantial capital in the design and implementation of these programs. The fabric programs are implemented by the creation and distribution of sample books to retailers and designers. These sample books are essential to the distribution of decorative fabrics by distributors. The sample books have a useful life of four to five years and are costly to design, produce, and distribute. Fabricut distributes these sample books throughout its national market to more than sixty showrooms. Fabricut purchased certain decorative trimmings from Castellano. The trim was purchased for the purpose of creating fabric programs and the sample books necessary to implement such programs. Because the sample books have a useful life of four to five years, vendors of fabrics, like Castellano, promise product continuity. An essential element in the successful distribution of decorative fabrics is to be able to timely fill product orders. . . . Purchasers eschew distributors that develop a reputation for being unable to timely fill product orders. A distributor of fabrics, like Fabricut, must be able to deliver the product marketed by means of the sample books. In the industry, customers of distributors package orders to include the trim and the other decorative fabrics required for use by the designer or the retail customer. When a distributor cannot deliver the trim, the distributor frequently loses the entire order – both the trim and the other decorative fabrics.

3

(Compl. ¶¶ 1-5.) Fabricut further alleges that the failure of Castellano to provide "product continuity" was "due in major part to mismanagement by the son, daughter, and son-in-law of a principal owner of Castellano" and "due in major part to the mismanagement of Voigt upon appointment as liquidator." (*Id.* ¶¶ 8-9.) Thus, Fabricut's Counterclaim arises from both pre-sequestration conduct of Castellano or its agents and post-sequestration conduct of Voigt in his capacity as liquidator. Based on these failures to provide product continuity, Fabricut alleges that its sample books were rendered worthless, fabric programs had to be abandoned, customers canceled substantial orders, it lost potential business, its operating costs were increased, and it incurred costs in establishing relationships with other vendors of trim. (*Id.* ¶ 10.) Fabricut seeks damages in excess of $400,000.00 on its counterclaim for breach of the promise of product continuity. Voigt moved to dismiss the Counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the

court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

## III. Motion to Dismiss

Voigt's motion essentially alleges two grounds for dismissal: (1) the Counterclaim may only be asserted in the South Africa Court (*see* Mot. to Dismiss Counterclaim ¶ 10) ("Impermissible Forum Argument"); and (2) international comity abstention, (*see id.* ¶ 9). The Impermissible Forum Argument is premised on the following legal propositions: (1) Castellano, and not Voigt, is the proper defendant to the Counterclaim, and (2) the Counterclaim violates the "stay" imposed by

5

SAIA § 75(2) and must be asserted in the South Africa Court. The international comity argument is premised on the Court's discretionary power to abstain from infringing on a foreign proceeding.

### A. Impermissible Forum Argument

To the extent the Counterclaim is based on post-sequestration conduct by Voigt in his capacity as liquidator, the Court finds that the Counterclaim is proper in this forum. Voigt sued to recover for unpaid debts on invoices spanning June to December 2009. Fabricut counterclaimed against Voigt, in part, for certain failures in his capacity as liquidator related to these or other trim purchases. Whether viewed as a compulsory or permissive counterclaim under Federal Rule of Civil Procedure 13 ("Rule 13"), Voigt subjected the Castellano estate to such claim by filing litigation in this Court in his representative capacity. To the extent the Counterclaim is based on pre-sequestration conduct by Castellano, before Voigt was the appointed liquidator, the Counterclaim is actually against Castellano, the sequestered entity. *See generally In re Adbox, Inc.*, 488 F.3d 836, 840-41 (9th Cir. 2007) (holding that trustee was not proper party to counterclaim asserted by creditor in trustee's "preference action" under U.S. bankruptcy code because the counterclaim alleged causes of action that could have been brought against the debtor prior to its bankruptcy filing). Were the Court to award a sum-certain judgment against Voigt based on Castellano's breaches of the promise of product continuity, this would unfairly deprive Castellano's creditors of estate funds. Therefore, to the extent it seeks recovery for pre-sequestration breaches, the Counterclaim ordinarily should be asserted in the South Africa Court.

The next question is whether equitable doctrines – such as recoupment or setoff – permit the Counterclaim against Castellano to be asserted against Voigt in this case.[5] One commentator has explained recoupment as follows:

> Recoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff. It allows a court to look at the whole contract, sum up the grievances on each side, strike a balance, and give plaintiff judgment for only such difference as may be found in his favor. The doctrine of recoupment allows a defendant to "defend" against a claim by asserting, up to the amount of the claim, the defendant's own claim against the plaintiff growing out of the same transaction, or set of transactions, strictly for the purpose of abatement or reduction of the plaintiff's claim. It encompasses the right of a defendant to reduce or eliminate the plaintiff's demand either because the plaintiff has not complied with some cross-obligation under the contract on which the plaintiff sues or the plaintiff has violated some legal duty in making or performing that contract.

80 C.J.S Set-off and Counterclaim § 2 (footnotes omitted); *see also In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996) (explaining recoupment doctrine in context of U.S. bankruptcy law) ("Recoupment allows the defendant, in a suit between the estate and another, to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim.") (internal quotations omitted).[6] "Thus, recoupment is an equitable doctrine that allows the determination of a just and proper liability regarding such a claim." *In re Peterson Distrib., Inc.*, 82

---

[5] Fabricut at least implies that its Counterclaim indeed seeks recoupment, despite that the amount sought exceeds that sought by Voigt. (*See* Resp. to Mot. to Dismiss 7 n.5 ("Contrary to Plaintiff's claim in this case that the funds sought by Fabricut must be claimed from Castellano, Fabricut's recoupment of its damages through its counterclaim is entirely appropriate. . . .").) Fabricut then cites U.S. bankruptcy law for the proposition that equitable claims for recoupment and/or setoff may be asserted against trustees such as Voigt, notwithstanding prohibitions against suing the bankrupt entity.

[6] While mindful that this case does not arise under the U.S. bankruptcy code, the Court finds certain bankruptcy principles – and specifically those related to recoupment – helpful in deciding the issues presented here.

F.3d at 959 (internal quotations omitted). In bankruptcy cases, recoupment is narrowly construed because it violates the basic bankruptcy principle of equal distribution to creditors. *See id.* (explaining that pre-petition debts generally may not be satisfied through post-petition actions). For the same reasons, "same transaction" is a term of art in the context of bankruptcy recoupment. *See id.* In order for claims to arise from the same transaction for the purposes of recoupment, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* (internal quotations omitted).[7]

The Court concludes that the equitable doctrine of recoupment permits Fabricut to seek damages, up to the amount ultimately recovered by Voigt, for breaches committed by Castellano in connection with the purchases associated with the June-December 2009 invoices. As in U.S. bankruptcy proceedings where recoupment is permitted against trustees in limited circumstances, *see In re Peterson Distrib., Inc.*, 82 F.3d at 959, equity favors allowing recoupment against Voigt here. While Fabricut cannot recover damages from Voigt for any pre-sequestration breach, equity allows the Court to reduce damages otherwise flowing to Voigt (and the Castellano estate) by any damages flowing to Fabricut, so long as Fabricut's damages arise from the same transactions for which Voigt seeks payment. The facts of this case fit well within the U.S. bankruptcy version of recoupment because the claims, as alleged and argued by Fabricut,[8] arise from integrated purchase

---

[7] Setoff also allows a creditor to offset a mutual debt owed to the creditor; however, the creditor's mutual debt and claim generally arise from *different* transactions. *See id.* at 959. Therefore, recoupment is the more applicable doctrine in this case.

[8] The Court added the language "as alleged and argued by Fabricut" to make clear that the Court was not making any final determinations as to this question.

8

transactions, such "that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* Stated differently, equitable reasons permit Fabricut to attain priority over other creditors with respect to the unpaid funds sought by Voigt in this litigation. *See id.* ("[R]ecoupment functions like a security interest, in that it grants priority to a creditor's claim in the bankruptcy estate in so far as the estate has a claim against the creditor arising from the 'same transaction' as the creditor's claim."). Allowing the Counterclaim for pre-sequestration breaches to proceed as one for recoupment is consistent with common law and U.S. bankruptcy law. It will also promote judicial economy by resolving, in one proceeding, all disputes regarding the purchases reflected in the relevant invoices.[9] The Court therefore rejects the Impermissible Forum Argument and finds that the Counterclaim is permissible in this forum in the limited form explained above.

### B. International Comity Abstention

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) (internal quotations omitted). "The doctrine has never been well-defined," and it has been described as "an amorphous never-never land whose borders are marked by fuzzy lines of politics, courtesy, and good faith." *Id.* (internal quotations omitted). The doctrine is primarily concerned with maintaining amicable working relationships between nations, and it is

---

[9] The Court's prior wording erroneously indicated that the purchases were made from June 2009 through December 2009. These are the dates of the invoices rather than the dates of purchases.

9

discretionary rather than "an imperative obligation." *Id.* (describing doctrine as discretionary rule of practice, convenience, and expediency). Declining to decide a question of law on the basis of international comity is a form of abstention. *Id.* at 422.

Based on the doctrine of international comity, "U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *Id.* at 424.[10] American courts generally defer to foreign bankruptcy proceedings because the "equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." *Id.* (internal quotations omitted). "[D]eference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." *Id.* at 424.

The Court declines to abstain from deciding Fabricut's counterclaim on grounds of international comity. First, Voigt instigated this action in U.S. federal district court, thereby subjecting himself to Rule 13 and other equitable principles discussed above that permit the Counterclaim to be asserted in this forum. Voigt should not be permitted to invoke the jurisdiction of this Court to recover assets for Castellano's estate and yet avoid counterclaims directly related

---

[10] One exception to this general rule is when the local dispute involves ownership of assets. *See id.* (explaining exception first set forth in *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 346 (2d Cir. 1992)) ("U.S. courts may resolve bona fide questions of property ownership arising under local law while a foreign bankruptcy proceeding is ongoing without deferring to the parallel foreign proceeding on grounds of international comity"). For example, where (1) currency was deposited in a New York bank account, subject to an agreement that such currency would be exchanged for foreign currency, and (2) a foreign company filed a foreign bankruptcy prior to ever fulfilling its contractual obligation, it was error for a U.S. bankruptcy court to abstain on grounds of international comity. *See id.* (citing *Koreag*). This was because the foreign debtor's other creditors "would not be prejudiced by a threshold determination as to property ownership" and because the U.S. claimant "was not asserting rights like a creditor in a bankruptcy proceeding." *Id.* In this case, Fabricut does not argue that its claim involves disputed ownership of any of Castellano's assets.

to such assets. Second, international comity is concerned in part with fairness and expediency. The funds sought for inclusion in Castellano's estate – $324,033.65 in unpaid debt from Fabricut – is exclusively the subject of litigation before *this* Court and not before the South Africa Court. There is no indication that Fabricut has appeared in the South Africa Court for any purpose. *Cf. JP Morgan Chase Bank*, 412 F.3d at 427-48 (affirming U.S. court's abstention where (1) the party seeking to avoid international comity abstention had appeared before the foreign bankruptcy court as an unsecured creditor, and "the salient issue (i.e., the debt) ha[d] been raised before the proper [foreign] court," and (2) there existed a parallel foreign proceeding to which the district court could defer). Even if the Court abstains from deciding the Counterclaim, it must still preside over Voigt's claim for the unpaid debt. It is not expedient for this Court to preside over discovery between Voigt and Fabricut regarding Castellano and Fabricut's transactions, and for the South Africa Court to preside over separate discovery regarding the same transactions. Therefore, the interests intended to be protected by international comity – courtesy, deference, and expediency – will not be served by this Court abstaining from deciding Fabricut's Counterclaim.

**IV.     Conclusion**

Plaintiff Merrick Voigt's Motion to Dismiss Counterclaim (Doc. 21) is DENIED. Fabricut's Counterclaim for any post-sequestration breach of the promise of product continuity may proceed against Voigt as an affirmative claim for relief, for which damages and judgment may be sought. Fabricut's Counterclaim for any pre-sequestration breach of the promise of product continuity may proceed against Voigt only as one for recoupment up to the amount of any recovery obtained by

11

Voigt. The parties' Joint Motion for Extension of Discovery, Motion, Pre-trial and Trial Deadlines (Doc. 29) is GRANTED. A new Scheduling Order will be entered.

    SO ORDERED this 6th day of April, 2012.

_____
TERENCE C. KERN
United States District Judge